UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRED BINDER, LINDA BINDER, WILLIAM MCGLAUN, and CAROL MCGLAUN on behalf of themselves and all similarly situated persons, § § § § § § Plaintiffs, § § v. § BANK OF AMERICA CORPORATION, FIA CARD SERVICES, N.A., and CITIGROUP INC., § § § § § § Defendants. § | | Civil Action No. 3:10-CV-770-B |

## MEMORANDUM ORDER AND OPINION

Before the Court is Defendants Bank of America Corporation's and FIA Card Services, N.A.'s (collectively "BOA") Motion to Dismiss and Supporting Brief filed June 30, 2010 ("Mot. Dismiss") (doc. 21). Having considered the parties' submissions and responses thereto, BOA's Motion is **GRANTED** for the reasons discussed below. The claims of Plaintiffs Fred Binder and Linda Binder ("the Binders") against Bank of America Corporation and FIA Card Services, N.A. are hereby **DISMISSED**.[1]

---

[1] Plaintiffs William McGlaun's and Carol McGlaun's claims against Citigroup, Inc. have been stayed pending arbitration proceedings pursuant to the parties' Stipulation filed September 20, 2010 (doc. 33) and this Court's Order of September 21, 2010 (doc. 34). Other parties are also named in the complaint as having purchased Sealand memberships but are not named as plaintiffs. This Memorandum Order and Opinion reaches only the Binders' claims.

1

# I.

# BACKGROUND[2]

The Binders bring this action on behalf of themselves and others who purchased Sealand Travel Club memberships from Royal Palms Travel, Inc. ("Royal Palms"), financed on credit cards provided by BOA. (FAC 1.) The Binders allege that Royal Palms has operated a fraudulent scheme to sell worthless discount travel plans. (FAC ¶ 12). The Binders attended a Royal Palms sales presentation at Royal Palms' Dallas, Texas location on November 1, 2008, and were told that the Sealand membership would enable them "to get the lowest travel prices anywhere" by sales representatives using "high pressure sales tactics." (FAC ¶¶ 16-17.) The Binders agreed to purchase a club membership after the presentation and signed a retail installment contract for a loan for the purchase price of $5,593.00. (FAC ¶ 17.) The contract provided that the Binders would pay no interest and no finance charges, and monthly payments were to begin November 1, 2008. *Id.* The Binders made no upfront payment to Royal Palms but were told that they would be issued a new credit card by BOA and that their membership charges would be transferred to that new card. *Id.* The Binders made two monthly payments of $55.00 directly to BOA on November 14, 2008 and December 15, 2008, assuming that the repayment obligations would be what Royal Palms had promised. (FAC ¶ 18.) On or about December 15, 2008, the Binders received the credit card agreement and the actual, "plastic" credit card from BOA, upon which they learned that they would have a zero percent interest rate only until May 2009, after which the interest rate would increase

---

[2] The background facts are derived from Plaintiffs' First Amended Complaint ("Complaint" or "FAC") (doc. 20), filed June 9, 2010, and on undisputed facts gleaned from the parties' court papers. Where there may be a dispute over a stated fact, the Court has so indicated by claiming the fact as one stated by that party to be true.

to 14.99%. *Id.* "Immediately upon receipt" of the agreement the Binders tried to cancel their Royal Palms membership. *Id.* At that time the Binders also contacted BOA to inform BOA that "the characteristics and real price of the vacation club had been falsely misrepresented to them at the time of purchase" and dispute the Royal Palms charges.[3] *Id.* On January 13, 2009 the Binders completed a credit dispute form, which they sent to BOA, and over the next several months the Binders continued to correspond with BOA to get the charges reversed. (FAC ¶ 19.) BOA ultimately denied the Binders' request for a reversal of charges, sought payment through a collection agency, and reported the outstanding balance to the credit reporting agencies as "charged off as bad debt." (FAC ¶¶ 19-21.) The Binders allege that they were directly harmed by BOA's failure to conduct an adequate investigation into the Royal Palms charges, BOA's enforcement of the debt after notice that the membership was a scam, and BOA's reporting to credit agencies that the Binders' debt was delinquent. (FAC ¶¶ 35-40.) The Binders seek actual damages, injunctive relief, restitution, pre- and post-judgment interest, expenses, attorney's fees, and costs on behalf of themselves and all similarly situated persons, based on common law negligence and a negligence per se claim based on violations of the Fair Credit Billing Act, 15 U.S.C. § 1601 ("FCBA"). (FAC ¶ 41.)

## II.

## LEGAL STANDARD

---

[3] The Binders also filed a complaint against Royal Palms with the Texas Attorney General's Office on December 15, 2008. (FAC ¶ 19.) On March 17, 2010, the Texas Attorney General filed suit against Royal Palms and its affiliates in Texas state court, alleging that Royal Palms committed deceptive trade practices and other violations of Texas state law. Plaintiff's Original Petition, *State v. Royal Palms Travel, Inc.*, Cause No. 10-03099 (162d Dist. Ct., Dallas County, Tex. Mar. 17, 2010). On March 17, 2010, the State of Texas obtained a temporary restraining order against Royal Palms. Ex Parte Temporary Restraining Order, *State v. Royal Palms Travel, Inc.*, Cause No. 10-03099 (162d Dist. Ct., Dallas County, Tex. Mar. 17, 2010).

In analyzing a motion under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The motion should be granted only if the complaint does not include enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be "nudged . . . across the line from conceivable to plausible." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *SW Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

## III.

## ANALYSIS

BOA moves to dismiss the Binders' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will examine BOA's specific contentions below.

A.   *Negligence Claim*

Defendant BOA argues that the economic loss rule precludes the Binders' recovery under a negligence theory. (Mot. Dismiss 3-6.) The Binders state in their Response in Opposition to the Binders' Motion to Dismiss ("Opp'n") that they "agree that the 'economic loss rule' precludes imposition of a common law negligence duty in these circumstances." (Opp'n 17 n.2.) Accordingly, the Court **DISMISSES** the Binders' common law negligence claim.[4]

---

[4] The Court declines to examine BOA's arguments regarding common law duties of lenders given that it finds that the economic loss rule precludes the Binders' recovery under a negligence theory.

4

B.  *Negligence Per Se Claim*[5]

BOA argues that the Binders' negligence per se claim is barred by the economic loss rule. BOA also argues that the First Amended Complaint does not adequately plead a violation of the FCBA, and that even if it did, the investigative requirements of Section 1666 of the FCBA cannot serve as the basis of a negligence per se claim. The Court will address these arguments below.

i.  Economic Loss Rule

BOA argues that the economic loss rule, which the Binders concede bars their negligence claim,[6] also bars the Binders' negligence per se claim. (Mot. Dismiss 2, 3-5, Mot. Reply 1, 2-3.) Specifically, BOA argues that Texas' economic loss rule bars the Binders' recovery under both negligence and negligence per se theories because they allege purely economic losses as their injuries, the payment of money for allegedly worthless services and damage to their credit rating. (Mot. Dismiss 4.) The Binders make no argument to rebut BOA's claim that the economic loss rule bars their negligence per se claim.

Under the economic loss rule, a party asserting a negligence claim "must plead and prove either a personal injury or property damage as contrasted to mere economic harm." *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App.-Dallas 2001); *see also Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444, 453 (Tex. App.-Dallas 2001) (citing *Express One*, 53 S.W.3d at 899). Damage to a plaintiff's credit rating arising out of a creditor's reporting to a credit agency has

---

[5] Although the First Amended Complaint technically lists only one count, "NEGLIGENCE", the parties' briefing on BOA's Motion to Dismiss discusses common law negligence and negligence per se claims as separate claims. The Court therefore treats the First Amended Complaint as presenting separate counts of negligence and negligence per se when ruling on BOA's Motion to Dismiss.

[6] *See* Section III(A), *supra*.

5

been considered a purely economic loss. *Blanche*, 74 S.W.3d at 452-43. Courts applying Texas law regularly find that the economic loss rule bars negligence per se claims. *See, e.g., Bell v. Am. Traffic Solutions, Inc.*, 633 F. Supp. 2d 305, 316 (N.D. Tex. 2009), *aff'd in part and vacated in part on other grounds*, 371 Fed Appx. 488, 2010 WL 1141639 (5th Cir. 2010); *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 688 (N.D. Tex. 2006); *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 694-95 (Tex. App.-Eastland 2002).

The Court finds that the Billings' negligence per se claim is barred by the economic loss rule. The Binders seek money damages for economic harms under a negligence per se theory, namely the recovery of money spent on the Sealand membership and damage to their credit history caused by BOA's reporting of the charges in dispute, in violation of the FCBA. The Binders also put forth no argument on why the economic loss rule should not apply to their claims. Accordingly, the Court finds that the Binders' negligence per se claim should be and hereby is **DISMISSED**.

  ii. <u>FCBA Billing Error</u>

The Court finds that the Binders' failure to properly allege a billing error under Section 1666 of the FCBA[7] constitutes additional grounds to dismiss the Binders' negligence per se claim. The FCBA provides that debtors may challenge perceived billing errors on credit card statements through a specific procedure, thus triggering the creditor's obligations under the FCBA to investigate and verify its billing. *Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F. Supp. 2d 818, 825 (S.D. Tex. 2007). A debtor may maintain a cause of action under the FCBA if he alleges a violation of Section

---

[7] The FCBA is enforced by the Truth in Lending Act, 15 U.S.C. §§ 1601-1677, and implemented by Regulation Z, 12 C.F.R. §§ 226.1-226.35. *Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F. Supp. 2d 818, 825 (S.D. Tex. 2007).

1666's billing dispute resolution procedure. *Beaumont v. Citibank (S.D.) N.A.*, 2002 WL 483431, at *3 (S.D.N.Y. Mar. 28, 2002). In order to state a claim under Section 1666, a plaintiff must allege "(1) the existence of a billing error; (2) plaintiff's timely notification of the billing error; and (3) failure of the card issuer to comply with the procedural requirements of Section 1666." *Id.* The parties are in dispute as to whether the Binders properly pleaded a "billing error" and proper notice under the FCBA.

The Court finds that the Binders did not properly plead a billing error under the FCBA. Section 1666(b) states that:

> For the purpose of this section, a "billing error" consists of any of the following:
> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.
> (3) A reflection on a statement of goods not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.
> (4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.
> (5) A computation error or similar error of an accounting nature of the creditor on a statement.
> (6) Failure to transmit the statement . . . to the last address of the obligor which has been disclosed to the creditor . . . .
> (7) Any other error described in regulations of the Board.

15 U.S.C. § 1666(b). The Binders argue that they sufficiently pleaded a billing error under Section 1666(b)(3) by alleging that Royal Palms did not deliver services "in accordance with the agreement made at the time of the transaction," as the parties had agreed that the loan would remain interest-

free.[8] (Opp'n 8-10; FAC ¶ 18.) The Court finds that this is an unsupported interpretation of Section 1666(b). Under the Official Staff Interpretations to 12 C.F.R. § 226.13, complaints about the quality of goods or services received do not constitute "billing errors" under the FCBA. 12 C.F.R. § 226, Supp. I. com. 13(a)(3); *see also Greisz v. Household Bank (Ill.)*, 8 F. Supp. 2d 1031, 1042 (N.D. Ill. 1998), *aff'd*, 176 F.3d 1012 (7th Cir 1999); *Beaumont*, 2002 WL 483431, at *4. Additionally, the FCBA, its implementing regulations, and Official Staff Interpretations focus on what might be considered clerical errors - the debtor was billed the wrong amount, billed for items he did not purchase, billed for items he refused or did not receive, or the creditor made some type of computational error or did not mail a statement. *See, e.g.*, 12 C.F.R. § 226.13(a) (defining billing error under the Truth In Lending Act). Here, the Binders do not dispute that they received a travel club membership and that they were charged the agreed purchase price of $5,593.00, nor do they argue that BOA made a computational error. Rather, they argue that the "characteristics" and "real price" of the travel club were misrepresented to them at the time of purchase. (FAC ¶ 18.) While perhaps the Binders' allegations do not concern "quality" as one normally thinks of a physical good such as an automobile, the Court finds convincing BOA's argument that misrepresentations concerning the "characteristics" of a travel club membership, including the representation that the loan would remain interest-free, are more properly construed as misrepresentations regarding the quality of the membership than as a billing error under the FCBA. *See* Mot. Dismiss 16-18, Mot.

---

[8] After reviewing the credit card agreement and learning that the card would have a zero percent interest rate only until May 2009, the Binders immediately tried to cancel the membership, contacted BOA to dispute the charges, and informed BOA that the "characteristics and real price of the vacation club membership had been falsely misrepresented to them at the time of purchase." (FAC ¶ 18.)

Reply 4-5. *See also Beaumont*, 2002 WL 483431, at *4 (finding no allegation of billing error where plaintiff did not state that he "failed to receive a statement, received a statement that contained an error (such as the presence or absence of a particular charge or a miscalculation), or received a statement reflecting a charge about which he requested additional information"). The Court declines to adopt the Binders' more expansive interpretation of a FCBA billing error and therefore **DISMISSES** the Binders' negligence per se claim.[9]

### iii. Notice Requirement of the FCBA

BOA also argues that the Binders fail to allege that they sent the proper written notice of the alleged billing error to FIA within sixty days, as required by Section 1666, as the First Amended Complaint does not allege when the Binders received their first FIA credit card statement showing the Sealand charge. (Mot. Dis. 18-19.) In response, the Binders argue that the Court "should infer from Plaintiffs' allegations that they first received a credit card agreement and a credit card from Defendants 'on or about December 15, 2008,' that they had also not received a credit card *statement* from Defendants before that time." (Opp'n 11) (emphasis in original) (citing FAC ¶ 18). As the Binders allege that they sent written notice of their complaint by January 13, 2009, they argue their notice to BOA was sent within the required sixty days. *Id.* BOA argues in reply that the Binders' payment on November 14, 2008 necessarily implies that the Binders must have received a billing statement prior to November 14, 2008, meaning that the Binders' notice to BOA was untimely.

---

[9]The Binders argue that the *Beaumont* court misinterpreted the FCBA's provisions regarding billing errors, "rendering meaningless subsection (b)(3) of the statutory definition." (Opp'n 10.) Without determining the precise metes and bounds of Section 1666 subsection (b)(3), the Court notes that the interpretation adopted by the Court today would not preclude finding a billing error under subsection (b)(3) where the plaintiff was charged for goods or services he refused or never received. Additionally, the Court notes that the Binders cite no authority supporting their more expansive interpretation.

9

(Mot. Reply 5-6.) The Court finds BOA's arguments unpersuasive and holds that, drawing all reasonable inferences in the Binders' favor, the Binders pleaded sufficient facts to allow the Court to infer that they gave timely notice to BOA.[10]

C.   *Other Defenses*

BOA also argues that the investigative requirements of Section 1666 cannot serve as the basis of a negligence per se claim. (Mot. Dismiss 19-24.) BOA also argues that the Binders' negligence per se claim must be dismissed as to Defendant Bank of America Corporation ("BAC") because BAC, as a bank holding company, is not a creditor as defined by the FCBA and therefore not subject to the FCBA's investigatory obligations. (Mot. Dismiss 24-25.) Because the Court finds that the Binders' negligence per se claim must be dismissed due to the economic loss rule and the Binders' failure to plead a billing error under Section 1666 of the FCBA, the Court does not reach these arguments.

## IV.

## CONCLUSION

For the reasons discussed above, Defendants Bank of America Corporation's and FIA Card Services, N.A.'s Motion to Dismiss is **GRANTED**. Plaintiff Fred Binder's and Linda Binder's claims against Defendants Bank of America Corporation and FIA Card Services, N.A. are **DISMISSED WITHOUT PREJUDICE**. The Court does not take lightly dismissal of a claim without reaching

---

[10] BOA argues that the Court may not infer that the Binders received their first statement after making payments on the card. (Mot. Reply 5-6.) While it may be uncommon for credit card holders to make payments prior to receiving their first statement, it is certainly plausible that the Binders did so, given their allegation that "monthly payments were to begin on November 1, 2008." (FAC ¶ 17.) The Court also notes that it is likely uncommon for credit card holders to receive their first statement prior to receiving their credit card agreement and their physical, "plastic" credit card. At any rate, the Court does not reach the issue of whether the Binders would be able to prove proper notice at trial.

its merits. Thus, a plaintiff will be given the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted.") (citation omitted). The Court notes that the Binders request in their Opposition Brief, "[r]egardless of this Court's disposition of Defendants' Motion to Dismiss . . . that they be provided opportunity to amend their complaint to plead additional statutory causes of action under federal and/or state law, based on the identical factual allegations in the First Amended Complaint." (Opp'n 17 n. 2.)

If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than twenty (20) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, Bank of America Corporation and FIA Card Services, N.A. are hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed within ten (10) calendar days of the repleading. No further briefing will be permitted.

**SO ORDERED.**

**SIGNED November 22, 2010.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE